ROUAN v. CASPER BRICK & TILE COMPANY
(No. 1066; Decided Jan. 23, 1923; 211 Pac. 1102)

LANDLORD AND TENANT—CONTRACTS—LEASE CONDITIONS—CONSTRUC-
TION OF LEASE—WAIVER.

1. A lease for the removal of clay and kindred materials for use in the operation of a brick and clay products business on the premises, for a stipulated royalty wherein lessee agreed to "erect and complete at least one unit of the plant necessary for the operation of said business on said premises on or before the expiration of six months," *held* not to obligate lessee to erect said plant unit on the leased land.

2. In an action by lessor for the forfeiture of a lease on the ground that lessee had breached a condition thereof by failing to construct a manufacturing plant on the leased premises, the construction and operation of the plant having gone on for about three years upon lands outside the leased area and of which fact lessor had knowledge, *held* sufficient to show a waiver by lessor of a right to

require the construction and operation of the plant on the
leased premises even if it were so originally intended by
the parties.

Action by Raymond Rouan against the Casper Brick and
Tile Company for the forfeiture of a contract on the ground
of a breach of conditions by the latter. From a judgment
for defendant, plaintiff appeals. The material facts are
stated in the opinion.

APPEAL from the District Court, Natrona County; HON.
CYRUS O. BROWN, Judge.

*E. G. Vanatta,* for appellant.

The only question before the court is whether defendant
complied with the terms of the lease. There is no dispute as
to the terms of the contract; lessee clearly obligated itself
to erect and complete at least one unit of the plant necessary
for the operaion of the brick and clay products business on
the premises on or before the expiration of six months, in-
cluding the installation of necessary machinery therein.
It was stipulated that a violation of any of the terms of the
lease should first be called to the attention of lessee and a
failure to remedy such breach within thirty days, rendered
the lease null and void. A notice was served claiming a
breach; no attention was paid to it; lessee had failed to
erect and complete at least one unit of the manufacturing
plant upon the leased lands; the plant unit was constructed
and operated upon other land, and was connected by a
trustle with some of the operations on the leased land.
Questions of interpretation as to the meaning of the term
"unit" as used in describing the brick manufacturing plant
arose at the trial. It was contended that two-thirds of the
trustle, the trap and barn were on lessor's land. Defendant
admitted that no brick was manufactured on Rouan's land.
The evidence clearly shows the intention of the parties that
the plant was to be constructed upon the leased land.
Rouan was not present when the selection of the site was
made, a place outside the leased premises, but as soon as he

obtained knowledge of the fact he served notice of protest. The facts do not constitute ground for estoppel in pais. (21 C. J. 1135.)  An act beneficial to the party setting up the estoppel cannot be relied upon.  (46 Pac. 11; 107 N. W. 173; 192 N. Y. 566, 85 N. E. 1110.)  Where the intent of the parties is ascertained it must prevail regardless of careless recitals in contracts.  (Uinta M. & T. Co. v. Ajax Co., 141 Fed. 356, 73 C. C. A. 35.)  The purpose of the construction is to ascertain the intention of the parties, which when discovered, must prevail.  (Pressed Steel Co. v. R. R. Company, 121 Fed. 609, 57 C. C. A. 635; Cowles Co. v. Lowrey, 79 Fed. 331, 24 C. C. 616.)  The legal effect of the agreement must be enforced.  (Hagerman v. Holmes, 53 N. E. 739, 179 Ill. 275.)  Courts will give effect to the intention of the parties.  (Milliken v. Starr, 54 N. E. 328, 180 Ill. 458; Noe v. White, 105 Ill. App. 502; Fawker v. Paper Company, 88 Ia. 169, 55 N. W. 200, 45 A. S. R. 230.)  Prior oral agreements merged in the written instrument become a part of the transaction.  (Armington v. Stelle, 27 Mont. 13, 69 Pac. 115, 2 Am. Cas. 147; Omaha Co. v. Tabor, 13 Colo. 41, 21 Pac. 925; Sheldon v. Hartford Ins. Co., 22 Conn. 235; Nally v. Long, 71 Md. 585, 18 Atl. 811; Cochran v. Zachery, 137 Ia. 585, 115 N. W. 486; Kupferschmidt v. Ins. Co., 80 N. J. L. 441, 78 Atl. 225, 28 L. R. A. (N. S.) 503; 10 R. C. L. 1046.)  Holden, representing defendant, knew the boundaries of the property and was not misled by Rouan; the facts did not constitute grounds for an equitable estoppel. (Perkins v. Morristown Co., 22 Atl. 180; 21 C. J. 1160.) The contract containing the provision for notice in case of a breach of its conditions and evidence that notice was served precludes evidence as to the question of waiver.  Parties may provide for the annulment of their agreements, either by subsequent agreements or by failure of performance. (Schwab v. Baltimore, 104 N. W. 10, 95 Minn. 295; Benham v. Columbia Canal Co., 132 Pac. 994.)  The contract is not subject to interpretation by the party, or any one else, concerning the matter upon which it clearly speaks.  (Butte

Co. v. City of Butte, 138 Pac. 195.)   Every provision of the instrument should be given its ordinary meaning and effect. (Uinta Co. v. Ajax Co., supra; Benney v. Becker Co., 134 Pac. 280.)   Estoppel in pais may only be used to prevent injustice.   (21 C. J. 1138.)   Where an estoppel exists against an estoppel, the matter is set at large.   (21 C. J. 1139.)   An essential element of equitable estoppel is that the acts relied upon must have been wilfully intended to lead the party setting up the estoppel to act upon them.   (Beckstead v. Bank (Wyo.) 176 Pac. 726.)   The trial court erred in overruling the motion to strike the demurrer and also erred in the admission of evidence.   The judgment should have been for plaintiff, the contract canceled and defendant, enjoined from further taking clay and shale from the premises.

*Nichols & Stirrett,* for respondent.

The clause in the lease relied upon for a reversal of the judgment does not expressly require the erection of a plant unit on the leased lands.   The business of taking clay and other material and the manufacture of brick was the business to be carried on upon the premises.   The plant unit was to be erected for the operation of the business but the contract nowhere requires that the plant shall be erected upon the leased land.   The site for the plant was selected by the original lessee in plaintiff's presence, or as we contend, jointly selected by said lessee and plaintiff, who acquiesced in the location and operation of the plant until 1920 at which time he manifested a desire to cancel the contract.   No benefit would accrue to plaintiff if the entire plant had been erected on his land.   It would in fact be detrimental to his land.   It was shown during the course of the trial that plaintiff wants the land for town lots or for a similar purpose. The royalty has been paid promptly.   Plaintiff is estopped from demanding a rescission; (Black on Rescission pp. 1380-1382.)   Plaintiff is estopped by his knowledge and laches, id. 1261-1275.   A landlord by accepting rent from his tenant, after a breach of a condition of the lease with knowledge that breach had been committed, waives the right to

declare the lease forfeited on account of the breach. (16 R. C. L. 1130; 24 Cyc. 1359-1361; Garnhardt v. Finney, 93 Am. Dec. 303.) Any recognition of tenancy subsisting after the right of entry has accrued, if the landlord has notice of the facts constituting basis of forfeiture, amounts to waiver. Forfeitures are not favored in law and when once waived will not be assisted by the court. Appellant contends that respondent should have built the plant on the leased land within six months after the date of the lease. Our contention is that the lease does not so provide. If the language of the agreement is contradictory, obscure or ambiguous, or its meaning doubtful, so that the contract is fairly susceptible of two constructions, one of which makes it fair, customary and such as prudent men would naturally execute, while the other makes it inequitable, unusual or such that prudent men would not be likely to enter into, then the interpretation which makes it a rational and probable agreement must be preferred to that which makes it an unfair, unusual or improbable contract. (Rope Co. v. Mining Co., 173 Fed. 855.)

*E. G. Vanatta,* in reply.

The claims of respondent that the contract does not require the plant to be erected on the premises; that defendant has complied with the contract; that the site of the plant was agreed upon by both of the parties, are not sustained by the contract, itself, or by the evidence. If these claims were true, a mere agreement to sell clay would have been sufficient. The contention of knowledge of notice, acquiescence and approval on the part of plaintiff while defendant was expending on its business the sum of $90,000, without protest on the part of plaintiff, is not sustained by the evidence. After evidence tending to show a waiver was introduced the court erred in refusing the offer of proof in sustaining objections to questions along that line. Rouan was misled by representations that the buildings were being erected on his land. Inconvenience, hardship or expense cannot excuse a party from the performance of a lawful undertaking. (6

R. C. L. 997.)   The contract is clear; there is nothing for the court to construe.

Kimball, Justice.

This is an appeal from a judgment denying relief to the plaintiff, appellant, in an action in which he asked the court to declare a forfeiture of a contract, called a lease, dated October 9, 1917, by plaintiff and his wife, as lessors, to the assignors of the defendant, respondent, as lessees.

The instrument recites that lessors, being the owners of a tract of land in Natrona County, leased it to the lessees for the term of 99 years, "together with the exclusive right * * * to take from said premises * * * all clay (and kindred materials) contained in said premises and desired by lessees * * * for the proper maintenance and operation of a general brick and clay products business on said premises, together with the further right to maintain and operate said business in all its branches on said premises and to sell therefrom the raw or manufactured products of and from said business."

Lessees are to have rights of way for roads, tramways, telephones, etc., the right to use water from said premises, and it is provided, generally, that:

"Lessees are expressly given the right and privilege to use such portion of the surface of said premises as may be necessary for the maintenance and operation of said business, including the right to erect such buildings and other improvements thereon as may be necessary or advisable," and

"Lessees are given the further right to bring and use upon said premises in the operation of said business any and all clays, fire clays and other materials that may be necessary in the operation of said business and which cannot at the same or less expense be produced from said premises."

The "oil and gas contents" of the lands, "with all surface rights not necessary for the proper conduct of lessees' business operations thereon, and not in conflict to the rights and privileges herein granted to lessees," are reserved to

lessors, and it is provided that the operations of lessees shall interfere as little as possible with pasturage and cultivation of the lands, and not at all with the use and enjoyment of lessors' residence located thereon.

Unless unavoidably delayed the "lessees agree and contract to erect and complete at least one unit of the plant necessary for the operation of said business on said premises on or before the expiration of six months from the date hereof and to promptly install therein the necessary machinery for the proper operation of said business  *  *  *".

Lessees agree to pay lessors, "as full compensation for the rights and privileges herein given and granted by lessors and for the materials taken from said premises and used by lessees in the operation of said business," a stipulated royalty based on the quantity of products manufactured from said materials, with a fixed minimum of $500 per annum.

The faithful performance by lessees of the covenants to be performed by them is stated as the consideration for the lease which shall become null and void if they fail "to comply with all and several of the terms" thereof and do not remedy the breach within 30 days after notice.

The claimed breach of the contract was the failure of lessees and their assigns to construct and operate their brick plant, or at least one unit thereof, on the leased premises. The defendant, denying the breach, insists that the lessees did not agree to construct the plant, or a unit thereof, on the leased lands, and the meaning of the contract in this regard will be our first inquiry.

It is clear that the main object of the contract was to provide for the mining from the leased lands of the raw materials needed in the manufacture of brick, the lessees desiring to have those materials for use in their factory, and the lessors desiring to receive the royalty. The occupation of a part of the lands by lessees for their buildings and other improvements, though contemplated and probably intended by the parties, is several times referred to as a right or privilege granted to lessees, evidently for their benefit. The com-

pensation to be paid lessors did not depend in any way upon such occupancy, and it would seem clear that the more largely that privilege were exercised by lessees the less would be the value to the lessors of their reserved rights in the land.

It was doubtless intended for the benefit of the lessors that the manufacture of brick from the materials to be taken from the lands should be commenced without unnecessary delay, and we think it was to carry out that intention that the parties inserted the clause whereby the lessors agreed to complete one unit of the plant before the expiration of six months from the date of the lease. The plaintiff contends that because this unit was to be constructed for the stated purpose of the ''operation of said business on said premises,'' the lessees were in default by failing to erect it on the leased lands. Had the parties desired to express clearly an intention that the lessees be bound to erect this unit on the leased lands, precision of language would have required that the contract provide that lessees agree ''to erect and complete on said premises at least one unit of the plant.'' We do not wish to lay too much stress upon the phrasing of this clause, yet, as we think it appears from the other provisions of the contract that the building of the plant upon the land was intended by the parties as a right which might be exercised by lessees rather than a duty which they were bound to perform, the mere presence in this clause of the statement that the unit should be for the purpose of operating said business on said premises, without some less ambiguous language requiring that it must be constructed on the land, does not change our view with respect to the intention of the parties.

Thus far we have looked only to the language of the contract, for, of course, it is there that we should, if possible, discover its meaning. If, however, we grant that the language is so ambiguous as to allow and require the resort to aids of interpretation to discover the true intention of the parties, and then examine the evidence which tends to explain the situation of the parties at the time the contract

was made and the interpretation placed upon it by them by their conduct, we arrive at no different conclusion. There was evidence, most of which was uncontradicted or only perfunctorily denied, to warrant a finding of the following facts:

About the time the contract was made the site for the brick plant was selected by the lessees with the knowledge of the plaintiff from land which plaintiff then claimed to be within the boundaries of the leased premises. Plaintiff was then involved in a dispute with the adjoining land-owner on the south as to the location of the line separating their lands. After the lease was signed this dispute was settled by an "arbitration survey" which established plaintiff's south line about 135 feet north of the point which had been selected as the site for the plant. The lessees purchased the site of the persons who were thus proved to be the owners of it, and built their main plant at the point where it had always been understood that it would be built, using plaintiff's land for the location of such machinery only as was necessary to mine and transport the clay. For the period of three years following the making of the lease the plaintiff was a constant observer of the building operations which involved an outlay of about $100,000, and of the manufacturing operations, which included the mining and using of clay from his lands pursuant to the lease, and, without any claim whatever that the plant, or any unit of it, should have been built on his lands, accepted the royalties accruing under the lease. To excuse this seeming approval of the operations of lessees, the plaintiff offered to prove that until he consulted a lawyer in the year 1920 he did not understand that the lessees by failing to build on the leased lands had breached the contract. If this evidence had been admitted it would have served but to confirm the view that it was not intended that the lessees should be bound to do more than they have done. There is nothing in the record to indicate that the location and operation of the plant off

the leased lands has lessened the royalties which lessors may have expected, or damaged them in any other way.

If it were to be conceded that when the contract was made it was the intention of the parties that the lessees be required by it to construct the plant, or one unit thereof, on the leased lands, we think the evidence was sufficient to show a waiver by plaintiff of his right to insist at so late a day upon a compliance with the contract in that respect. However, as we hold that the lease cannot be given that construction, we deem it unnecessary to make more than this casual mention of the issue of waiver.

*The judgment is affirmed.*

BLUME, J., and RINER, District Judge, the latter sitting in place of Potter, Ch. J., concur.